UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE OXINA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LANDS' END, INC.,<br><br>Defendant. | Case No. 14-cv-2577-MMA (NLS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 11] |

Plaintiff Elaine Oxina brings this putative class action against Defendant Lands' End, Inc., alleging violations of California's Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL").  Doc. No. 5 ("FAC").  Defendant moves to dismiss Plaintiff's FAC in its entirety.  Doc. No. 11 ("MTD").  Plaintiff filed an opposition brief, Doc. No. 12 ("Opposition"), and Defendant replied, Doc. No. 13 ("Reply").  The Court determined the matter suitable for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss the FAC.

//

//

## BACKGROUND

Defendant Lands' End, Inc. is an American clothing retailer that conducts business through mail orders, internet sales, and retail stores in the United States.  FAC ¶ 10.  Plaintiff is an individual residing in Chula Vista, California.  FAC ¶ 8.  On or about August 29, 2014, Plaintiff purchased a "Kids To-be-tied Plaid Necktie" ("the Necktie") from Defendant's website.  FAC ¶¶ 3, 19.  At the time of purchase, the description of the Necktie on Defendant's website "included the words 'Made in U.S.A' [sic] country of origin designation."  FAC ¶ 19.  However, the Necktie Plaintiff received bore a fabric tag with the words "Made in China."  FAC ¶ 3, Exh. B.  Accordingly, Plaintiff filed this nationwide class action complaint "on behalf of all purchasers of any Lands' End apparel product labeled as 'Made in USA' that is foreign-made or incorporates foreign-made component parts."  FAC ¶ 3 n.2.  Plaintiff alleges claims for violation of California's CLRA and UCL, as well as California Business and Professions Code § 17533.7, which makes it unlawful "to sell or offer for sale in [CA] any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' . . . when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is only proper where "there is no cognizable legal theory," or there is "an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing the motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations, and construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss," *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998), and it is improper for a court to assume a plaintiff "can prove facts that [he or she] has not alleged." *See Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Where leave to amend would be futile, the court may dismiss the claims without leave to amend. *See id.*

## DISCUSSION

**A.     Plaintiff Stipulates to Dismissal of Her CLRA Claim**

Defendant seeks to dismiss Plaintiff's CLRA claim because, *inter alia*, Plaintiff failed to comply with the statute's notice and affidavit requirements. In her Opposition, Plaintiff states that "[w]ith regard to Defendant's argument against Plaintiff's claim brought under the CLRA, . . . Plaintiff does not oppose this section only of Defendant's argument. Plaintiff will dismiss this claim only without prejudice and allow Defendant [sic][1] an opportunity to cure." Opposition, p. 3.

The CLRA, California Civil Code § 1750 *et seq.*, makes it unlawful to use "deceptive representations or designations of geographic origin in connection with goods

---

[1] Plaintiff appears to have erroneously transposed "Plaintiff" and "Defendant" in portions of her opposition brief. *See, e.g.*, Opposition, p. 10 ("Plaintiff cannot make sense of Plaintiff's [sic] argument as it seems to overlook Plaintiff's allegation . . . .").

or services," or to advertise "goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(4), (9). California Civil Code § 1782 provides:

> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
> The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.
> (b) Except as provided in subdivision (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice.
> . . .
> (d) An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

A claim for damages under the CLRA that is filed without giving proper notice must "be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009). A claim for the "equitable relief of disgorgement or restitution [is] still a claim for damages." *Cuevas v. United Brands Co.*, No. 11CV991 BTM RBB, 2012 WL 760403, at *4 (S.D. Cal. Mar. 8, 2012).

//

//

Plaintiff does not oppose Defendant's CLRA arguments, presumably because she concedes that she failed to comply with the 30 day notice requirement.[2]  However, Plaintiff requests that dismissal be without prejudice to allow a chance to cure, while Defendant argues that dismissal must be with prejudice.

Defendant relies on a line of cases from this District, beginning with *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003), which have interpreted the California Court of Appeal decision in *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 34 (Cal. Ct. App. 1975) as calling for a strict application of the § 1782 notice requirements.  *See Von Grabe*, 312 F. Supp. 2d at 1304; *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195 (S.D. Cal. 2005) *aff'd,* 252 F. App'x 777 (9th Cir. 2007) (dismissing CLRA claim with prejudice because "[s]trict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) ("Under *Laster and VonGrabe* [sic], failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends."). However, in 2009 the California Court of Appeal in *Morgan* clarified that federal courts requiring dismissal with prejudice for lack of proper notice pursuant to the CLRA "fail to properly take into account the purpose of the notice requirement," which "exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after the notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time." 177 Cal. App. 4th at 1261.  Accordingly, the court opined, "[a] dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy [the] purpose [of the CLRA].  Instead, the claim

---

[2] Pursuant to § 1780, Plaintiff also failed to comply with the CLRA's affidavit requirement.  *See* Cal. Civ. Code § 1780(d) ("[C]oncurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice.").

must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *Id.*

Other courts have adopted *Morgan*'s reasoning. *See Trabakoolas v. Watts Water Technologies, Inc.*, No. 12-CV-01172-YGR, 2012 WL 2792441, at *8 (N.D. Cal. July 9, 2012) ("Nothing in the legislative history indicates that the 30-day notice period was intended to bar consumer actions or was not curable."); *Herron v. Best Buy Stores, L.P.*, No. 12-CV-02103-GEB-JEM, 2014 WL 465906, at *5 (E.D. Cal. Feb. 4, 2014) (noting that *Cattie*, *Laster*, and *Von Grabe* "are unpersuasive, [and] were rendered before *Morgan* squarely addressed the issue"); *cf. Cuevas*, 2012 WL 760403, at *5 (applying *Morgan* and finding dismissal of CLRA claim from amended complaint unwarranted, even if plaintiff failed to provide proper notice before filing initial complaint). This is in part because:

> When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)).

Defendant does not provide, and the Court is not aware of, any convincing evidence that the California Supreme Court would decide differently than the *Morgan* court.[3] Therefore, to the extent Plaintiff improperly seeks damages without giving proper notice, and in accordance with Plaintiff's stipulation, Plaintiff's CLRA claim is

---

[3] To the extent that other decisions from this District rely on the *Cattie*, *Laster*, and *Von Grabe* line of cases, those decisions do not include any citation to, or consideration of, the California Court of Appeal's decision in *Morgan*. Nor do they address any evidence that the California Supreme Court would decide differently.

**DISMISSED** without prejudice.  Should Plaintiff seek to amend her CLRA claim, she must first comply with the CLRA's notice and affidavit requirements.  Cal. Civ. Code §§ 1780, 1782.

**B.    Plaintiff's Standing to Bring Claims under the FAL and UCL**[4]

    **1.    Plaintiff Sufficiently Alleges Standing Regarding Purchase of the Necktie**

Defendant moves to dismiss Plaintiff's FAL and UCL claims for a variety of reasons, including that Plaintiff fails to sufficiently allege economic injury or causation.  Plaintiff argues that she properly alleges economic injury because Plaintiff believed that the Necktie was made in the U.S.A., and that being made in the U.S.A. made the Necktie a superior quality product.

A private party only has standing to sue under the UCL where he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  The California Supreme Court has interpreted this statute as suggesting a simple test: first, a party must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*," and second, the party must "show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  In the context of a false advertising claim, the standing requirement can be satisfied by allegations that the plaintiff "would not have bought the product but for the misrepresentation," as "[this]

---

[4] In 2004, Proposition 64 amended California Business and Professions Code § 17204 and limited the standing of a private party bringing a claim under the UCL to only those who suffered an injury in fact and lost money as a result of unfair competition. *Kwikset*, 51 Cal. 4th at 321–22.  Proposition 64 also "made identical changes to the standing provision of the false advertising law." *Id.* at 321.  Accordingly, the Court addresses standing under the FAL and UCL together in this section.  The CLRA similarly provides a cause of action for "any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 . . . ."  Cal. Civ. Code § 1780.  Plaintiff stipulated to the dismissal of her CLRA claim, however, the Court notes that the analysis in this section would apply equally to Plaintiff's standing under the CLRA.

assertion is sufficient to allege causation—the purchase would not have been made but for the misrepresentation," and "[i]t is also sufficient to allege economic injury." *Id.* at 330. Causation can also be inferred from "the misrepresentation of a material fact." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 229 (2013) ("To satisfy the requirement of pleading actual reliance, or causation, in connection with false advertising for purposes of the UCL and the false advertising law, a plaintiff need only allege a misrepresentation of a material fact.").

Plaintiff has standing to bring claims under the FAL and UCL for the Necktie even though she fails to allege that she would not have purchased the Necktie but for Defendant's alleged misrepresentation. In *Kwikset*, a plaintiff brought FAL and UCL claims against defendant Kwikset Corp. on grounds that the defendant "falsely marketed and sold locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts or involved foreign manufacture." *Id.* at 316. Plaintiff specifically alleged that he would not have purchased the locksets "but for the 'Made in U.S.A.' labeling." *Id.* The court held that "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation." *Id.* at 330. This is because such an allegation is sufficient to allege both causation, and economic injury. *Id.*

Here, Plaintiff alleges economic injury in nearly the same way the plaintiff in *Kwikset* did—she alleges that she was deceived in purchasing a product that was not actually made in the U.S.A. However, she does not include an express allegation that 'but for' Defendant's misrepresentation, she would not have purchased the Necktie. Although Defendant strenuously argues that a plaintiff *must* make a 'but for' allegation in order to establish standing, such a rigid formulation is not the only means of establishing causation. *See Chapman*, 220 Cal. App. 4th at 228 ("*Kwikset* did not hold or suggest that an allegation that the plaintiff would not have purchased the product if not for the false

1 representation was the only way to satisfy the causation requirement.") This is because, under California law, an inference of reliance arises whenever a misrepresentation is material such that "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997), *as modified* (July 30, 1997). Such is the case here.

Plaintiff alleges that she relied upon Defendant's "Made in USA" representation in her purchasing decision, as she "believed at the time she purchased the Necktie that she was purchasing a superior quality product, as well as supporting U.S. jobs and the U.S. economy." FAC ¶ 20. As the court in *Kwikset* notes, "[i]n particular, to some consumers, the 'Made in U.S.A.' label matters. A range of motivations may fuel this preference, from the desire to support domestic jobs, to beliefs about quality, to concerns about overseas environmental or labor conditions, to simple patriotism." *Kwikset*, 51 Cal. 4th at 329. Accordingly, a representation that a product was made in the U.S.A. is material where a plaintiff alleges, as she does here, that "at the time she purchased the Necktie [she believed] that she was purchasing a superior quality product, as well as supporting U.S. jobs and the U.S. economy." FAC ¶ 20; *see Chapman*, 220 Cal. App. 4th at 229 ("To satisfy the requirement of pleading actual reliance, or causation, in connection with false advertising for purposes of the UCL and the false advertising law, a plaintiff need only allege a misrepresentation of a material fact."); *Morales v. Unilever U.S., Inc.*, No. CIV. 2:13-2213 WBS E, 2014 WL 1389613, at *3 (E.D. Cal. Apr. 9, 2014) (holding plaintiffs successfully invoked presumption of reliance where product labels contained material misrepresentations); *cf. Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) ("Although there may be an inference of reliance upon a showing of materiality, to adequately allege reliance, a plaintiff must still at a minimum allege that he saw the representation at issue.").

//

- 9 - 14cv02577

Because Plaintiff properly alleges economic injury and causation, she has standing to bring claims under the FAL and UCL regarding her purchase of the Necktie. Defendant's motion to dismiss Plaintiff's claims concerning her purchase of the Necktie for lack of standing is therefore **DENIED**.

### 2. Plaintiff Lacks Standing Regarding Unpurchased Products

Plaintiff seeks class-wide relief "on behalf of all purchasers of any Lands' End apparel product labeled as 'Made in USA' that is foreign-made or incorporates foreign-made component parts . . . and not just the specific necktie purchased by the Plaintiff." FAC, p. 3 n.2. Defendant moves to dismiss Plaintiff's claims regarding other products besides the Necktie on grounds that Plaintiff lacks standing to assert claims as to products Plaintiff did not purchase and advertising she did not see. Plaintiff opposes, arguing that the standing analysis is really "a question of typicality, which is inappropriate on a motion to dismiss." Opposition, p. 8.

In California, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Cortina v. Goya Foods, Inc.*, No. 14-CV-169-L NLS, 2015 WL 1411336, at *18 (S.D. Cal. Mar. 19, 2015) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (noting where composition of the product is less important, "cases turn on whether the alleged misrepresentations are sufficiently similar across product lines")). "[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *see Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) ("If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage.").

Plaintiff alleges that products marketed on Defendant's website besides the Necktie are also falsely designated as being "Made in USA." *See* FAC ¶¶ 1, 3, 12, 15. The purported misrepresentation in each instance is allegedly the same: that the phrase "Made in USA" is "prominently printed on the Defendant's website under Defendant's description of the apparel products themselves," even though the products are not actually made in the U.S.A. FAC ¶ 3. However, Plaintiff only refers to these other products as "apparel" even though the term "apparel" could conceivably encompass hundreds, or even thousands of different types of products, including those presumably made of different materials, and bearing different physical labels than the Necktie purchased by Plaintiff. FAC ¶ 12. Without any factual detail as to which "apparel" products Plaintiff refers, the Court cannot make a finding that the unpurchased products bear any similarity to Plaintiff's Necktie.

Accordingly, the Court **DISMISSES** without prejudice Plaintiff's claims regarding products other than the Necktie because her factual allegations are insufficient to establish standing.

### 3. Plaintiff Lacks Standing for Injunctive and Declaratory Relief

Defendant moves to dismiss Plaintiff's claims for injunctive and declaratory relief on grounds that Plaintiff "fails to allege a reasonable likelihood of future injury from the description of the Necktie as 'Made in USA.'" Motion, p. 9. Plaintiff opposes because barring Plaintiff from seeking injunctive or declaratory here "contradicts common sense and fairness." Opposition, p. 9.

To establish Article III standing, a plaintiff must show that he or she suffered an "injury in fact," that the injury is "fairly traceable" to the challenged conduct, and that it is "likely" and not just "speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish an injury in fact, the harm suffered by a plaintiff must be "concrete and particularized," *id.* at 560, and there must be "a sufficient likelihood that [he or she] will again be wronged a

similar way," *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Plaintiff does not allege that she is likely to purchase the Necktie again, or that she is still deceived by the alleged misrepresentation on Defendant's website. Accordingly, Plaintiff fails to allege that there is any likelihood that Plaintiff will be wronged in a similar way in the future. *See Mason v. Nature's Innovation, Inc.*, No. 12CV3019 BTM DHB, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013) ("[A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question."). Plaintiff's economic injury in this instance is also unlikely to be redressed by a favorable decision of her injunctive and declaratory relief claims. *See Cattie*, 504 F. Supp. 2d at 951 (noting that it is unclear how injunctive relief will redress plaintiff's injury where plaintiff knows truth behind allegedly false advertising). Accordingly, Plaintiff's claims for injunctive and declaratory relief are **DISMISSED** without prejudice.

C.     **Plaintiff Fails to State a "Made in USA" Claim under the FAL**

Defendant also moves to dismiss Plaintiff's FAL claim on grounds that Plaintiff fails to state a claim under California Business and Professions Code § 17533.7, which prohibits the sale of merchandise bearing words that falsely proclaim "Made in U.S.A." Plaintiff opposes dismissal because Defendant's website listed the Necktie as being "Made in USA," but the Necktie Plaintiff received bore the words "Made in China."

Section 17533.7 sets forth the following:

> It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words when the merchandise or any

article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

Plaintiff fails to state a claim under § 17533.7 because she fails to allege that the words "Made in U.S.A.," or similar words, appeared on the Necktie itself, or on the Necktie's container. When interpreting a state statute, a federal court applies the state's rules of statutory construction. *Turnacliff v. Westly*, 546 F.3d 1113, 1117–18 (9th Cir. 2008). Under California law, courts "give the language of the statute 'its usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.'" *Id.* (quoting *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001)). Accordingly, "[i]f the language of the statute is clear and unambiguous, the statutory analysis ends." *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 490 (9th Cir. 1996). It is clear and unambiguous that the text of § 17533.7 only creates liability where the words "Made in U.S.A.," or words to that effect, appear on the merchandise, or on the merchandise's container. It does not create liability for a product that is misleadingly described on a website with the words "Made in U.S.A." Therefore, Plaintiff has failed to state a claim upon which relief can be granted, and Plaintiff's § 17533.7 claim is **DISMISSED** without prejudice.[5]

### D.     Plaintiff Fails to State a UCL Claim

Defendant also moves to dismiss Plaintiff's UCL claims on grounds that Plaintiff's CLRA and FAL claims fail, and Plaintiff does not allege other unlawful conduct that could support a UCL claim. Plaintiff opposes, primarily on grounds that she has properly stated a claim under California Business and Professions Code § 17533.7.

The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations omitted). "Because the statute

---

[5] Dismissal is without prejudice because Plaintiff could plausibly amend her complaint to allege that the container she received the Necktie in falsely bore the words "Made in U.S.A.," or words to that effect.

is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

Under the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (internal quotations omitted). A Plaintiff who "cannot state a claim under a 'borrowed' law . . . cannot state a UCL claim either." *See Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013) (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)).

Under the unfair prong, there is disagreement among the California Courts of Appeal as to what constitutes an unfair business practice in the context of a consumer case. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("The UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts.") (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)). Consequently, three different tests have been applied in assessing a claim under this prong. *Id.* at 1170.

In the first line of cases, courts have held that "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n,* 182 Cal. App. 4th 247, 256 (2010)); *see Cel-Tech*, 20 Cal. 4th at 186–87 (requiring finding of unfairness under UCL be tethered to legislatively declared policy).

In a second line of cases, courts analyze whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis*, 691 F.3d at 1170 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th at 886–87 (1999)).

In the third line of cases, courts draw on "the definition of 'unfair' in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that '(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.'" *Drum*, 182 Cal. App. 4th at 256.

Under the fraudulent prong, a plaintiff must "show deception to some members of the public . . . [or] allege that members of the public are likely to be deceived." *Herrejon*, 980 F. Supp. 2d at 1207 (internal quotations and citations omitted). Unlike common law fraud, under the UCL a "violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647–48 (1996)).

Plaintiff fails to state a claim under any of the three UCL prongs because Plaintiff's § 17533.7 claim fails, and she stipulated to the dismissal of her CLRA claim. Plaintiff's claim under the unlawful prong fails because she does not state a claim under a "borrowed" law. *See Herrejon*, 980 F. Supp. 2d at 1206 (noting plaintiff who "cannot state a claim under a 'borrowed' law . . . cannot state a UCL claim either"). Likewise, Plaintiff fails to state a claim under the unfair prong because Plaintiff has not asserted any constitutional, statutory, or regulatory provisions that can be viably tethered to Plaintiff's claim. Furthermore, although Plaintiff alleges that Defendant engaged in business practices that are "immoral, unethical, oppressive or unscrupulous, the utility of such conduct, if any, being far outweighed by the harm done to consumers . . . in violation of Section 17533.7," as explained above Plaintiff has failed to state a claim under § 17533.7, and Plaintiff does not allege any facts from which the Court could infer that Defendant's

actions in this instance were immoral or unethical, as opposed to merely mistaken.[6] Plaintiff's claim under the fraudulent prong similarly relies on her failed § 17533.7 claim, and provides no factual detail as to any other allegedly fraudulent business practices.

Accordingly, Plaintiff's UCL claim is **DISMISSED** without prejudice.

**E.  Class Claims**

Defendant moves to dismiss[7] Plaintiff's class claims on behalf of non-California consumers on grounds that Plaintiff fails to state a claim, and because the class lacks standing to bring such claims. Plaintiff opposes on grounds that it is premature to decide such class questions.

Under California law, there is a presumption that the legislature did not intend a statute to govern conduct occurring outside the state unless such intention was clearly expressed, or can be reasonably inferred, from the statute. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Neither the language nor the legislative history of the UCL provides a reasonable inference that the legislature intended the statute to operate extraterritorially, therefore "the presumption against extraterritoriality applies to the UCL in full force." *Id.*; *see Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing UCL, FAL, and CLRA claims on behalf of putative nationwide class regarding activities occurring in other states).

Here, Plaintiff purports to represent a class of:
> All persons within the United States who purchased one or more of Defendant's apparel products, that were advertised with a "Made in USA" country of origin designation, that were foreign-made and/or composed of foreign-made component parts, within the four years prior to the filing of the complaint.

FAC ¶ 28.

---

[6] The Court need not consider whether Defendant's business practices are unfair under the Federal Trade Commission Act, as that test has been applied regarding "anti-competitive conduct, rather than anti-consumer conduct."  *See Lozano*, 504 F.3d at 736.

[7] Defendant moves to "Dismiss and/or Strike" Plaintiff's class allegations.  However, because the Court dismisses Plaintiff's FAC in its entirety, the Court need not consider Defendant's motion to strike.

In addition to the reasons Plaintiff's individual claim fails above, Plaintiff's claims regarding the nationwide class must be dismissed because Plaintiff does not allege that the misconduct suffered by the nationwide class occurred inside California, or that Defendant's headquarters or principal place of operations are inside California. *See Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *4 (N.D. Cal. June 13, 2012) ("A non-California resident may bring claims under the UCL and the CLRA, if they can allege misconduct that occurs within or emanates from California."); *Zora Analytics, LLC v. Sakhamuri*, No. 3:13-CV-639-JM WMC, 2013 WL 4806510, at *9 (S.D. Cal. Sept. 9, 2013) (holding that without facts indicating defendant's actions occurred or were substantially related to acts occurring in California, no UCL claim can be asserted). Accordingly, the Court **DISMISSES** Plaintiff's claims on behalf of the nation-wide class without prejudice.[8]

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Lands' End, Inc.'s motion to dismiss and **DISMISSES** Plaintiff's Complaint in its entirety. Dismissal is without prejudice and with leave to amend. Plaintiff may file an amended complaint that cures the deficiencies addressed herein on or before July 6, 2015.

**IT IS SO ORDERED.**

Dated: June 18, 2015

*/s/ Michael M. Anello*
Hon. Michael M. Anello
United States District Judge

---

[8] Although class allegations are generally examined during the motion for class certification, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Wilson*, 961 F. Supp. 2d at 1148 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).