1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| ELAINE OXINA, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>v.<br><br>LANDS' END, INC.,<br><br>                                        Defendant. | Case No.:  14cv2577-MMA (NLS)<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>[Doc. No. 39]<br><br>**AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Doc. No. 37] |

19
20

        Plaintiff Elaine Oxina ("Plaintiff), on behalf of herself and all others similarly situated, moves for final approval of class action settlement and for attorneys' fees and costs.  Doc. Nos. 39, 37.  The Court held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2).  Doc. No. 42.  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Costs.

/ / /

/ / /

/ / /

## BACKGROUND

Plaintiff brings this putative class action against Defendant Lands' End, Inc. ("Defendant" or "Lands' End"), alleging violations of California's Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"). Plaintiff also alleges negligent misrepresentation and intentional misrepresentation. *See* Doc. No. 20, Second Amended Complaint ("SAC").

Defendant is an American clothing retailer that conducts business through mail orders, internet sales, and retail stores in the United States. SAC ¶ 10. Plaintiff is an individual residing in Chula Vista, California. SAC ¶ 8. On or about August 29, 2014, Plaintiff purchased a "Kids To-Be-Tied Plaid Necktie" ("the Necktie") from Defendant's website.[1] SAC ¶¶ 3, 20. At the time of purchase, the description of the Necktie on Defendant's website "included the words 'Made in U.S.A' [sic] country of origin designation." SAC ¶ 20. However, the Necktie Plaintiff received bore a fabric tag with the words "Made in China." SAC ¶ 3, Exh. B. Accordingly, Plaintiff filed this nationwide class action complaint "on behalf of all purchasers of any Lands' End apparel product labeled as 'Made in USA' that is foreign-made or incorporates foreign-made component parts." SAC ¶ 3 n.2. Plaintiff alleges claims for violation of California's CLRA and UCL, as well as California Business and Professions Code § 17533.7, which makes it unlawful "to sell or offer for sale in [CA] any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' . . . when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

On February 10, 2016, Plaintiff and Defendant entered into a Class Action Settlement Agreement ("Settlement Agreement"), which is subject to review under Federal Rule of Civil Procedure 23. *See* Doc. No. 34. On February 12, 2016, Plaintiff filed the Settlement Agreement along with Plaintiff's Unopposed Motion for Preliminary

---

[1] The Neckties in question sold for $20.00 each on Lands' End's website. *See* SAC, Exh. A.

Approval of Class Action Settlement and Certification of Settlement Class. *See id.* On April 6, 2016, the Court entered an Order of Preliminary Approval of Class Action Settlement. *See* Doc. No. 36.

On September 6, 2016, Plaintiff filed the instant motions for Final Approval of Class Action Settlement and Attorneys' Fees and Costs. *See* Doc. Nos. 39, 37. On November 29, 2016, the Court held a final approval hearing on these matters. *See* Doc. No. 42.

## DISCUSSION

### I.   Overview of Settlement

#### A. Settlement Class

The Settlement Class is defined as all persons who, at any time from October 29, 2010 through October 29, 2014, purchased the "Kids To-Be-Tied Plaid Necktie" in California. Lands' End represents that the Settlement Class consists of thirty-eight (38) consumers ("Class Members").

#### B. Settlement Terms

The proposed settlement provides each Class Member with a full 100% refund of the purchase price of the Lands' End product at issue, in addition to interest at the rate of ten (10) percent per annum from the date of purchase, without the need to file a claim. Pursuant to the terms of the Settlement Agreement, Defendant agrees not to oppose an award of attorneys' fees and costs not to exceed $32,500.

### II.   Motion for Final Approval of Class Settlement

#### A. Legal Standard

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**B. Fairness Factors**

    1.    <u>Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In

-4-                                                                 14cv2577-MMA (NLS)

1
2

this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

3
4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

5
6
7
8
9
10
11
12

Plaintiff contends "the parties are fully apprised" of the strengths and weaknesses of each party's claims and defenses, and the potential risks to each party of further pursuing litigation in this matter.  Doc. No. 39-1 at 6.  Additionally, prior to the parties' settlement, Defendant filed a second motion to dismiss, which Plaintiff would "have to again oppose" if the action were further litigated.  *Id.* at 7.  The parties "believe that the Settlement presents a fair compromise and reasonable alternative to continuing to pursue the action through trial."  *Id.*  Accordingly, this factor weighs in favor of approving the settlement.

13

### 2.   Risk of Maintaining Class Action Status Through Trial

14
15
16
17
18
19
20

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement.  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

21
22
23
24

Plaintiff does not address this factor in her motion.  However, there is some risk that the Class would either not be certified or that something may arise before trial that would require the Court to decertify the Class.  As such, this factor weighs in favor of settlement.

25

### 3.   Stage of the Proceedings

26
27
28

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *DIRECTV*, 221 F.R.D. at 528.  In the context of class action settlements, as long as the parties have sufficient information to make an informed

1   decision about settlement, "formal discovery is not a necessary ticket to the bargaining

2   table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In*

3   *re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982)).

4          Based on the parties' representations, it appears the Settlement Agreement resulted

5   from arms-length negotiations, and was not the result of collusion.  Although formal

6   discovery was not conducted in this case, the parties "engaged in significant investigation

7   and evaluation of the factual and legal strengths and weaknesses of their respective

8   cases." Doc. No. 39-1 at 8.  Moreover, the parties engaged in informal discovery, which

9   "confirmed the number of Neckties purchased from Lands' End" during the class period.

10  *Id.*  The parties also represent they "possess a clear view of the strengths and weaknesses

11  of their case, with 'sufficient information to make an informed decision about

12  settlement.'" *Id.* (citing *Barani v. Wells Fargo*, 2014 WL 1389329, at *5 (S.D. Cal.

13  2014)).  Accordingly, this factor favors approval.

14                    4.   Settlement Amount

15         "In assessing the consideration obtained by the class members in a class action

16  settlement, it is the complete package taken as a whole, rather than the individual

17  component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at

18  527 (internal citation and alteration omitted).  "[I]t is well-settled law that a proposed

19  settlement may be acceptable even though it amounts to only a fraction of the potential

20  recovery that might be available to the class members at trial." *Id.* (citing *Officers for*

21  *Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)).

22         Pursuant to the Settlement Agreement, Defendant must provide Class Members

23  with a full 100% refund of their purchase price, plus interest at the rate of ten (10) percent

24  per annum from the date of purchase, without the need for Class Members to make a

25  claim.  Plaintiff contends the settlement "largely achieves the best recovery that Plaintiff

26  could achieve at trial, without the risks and inherent delays of an adverse trial decision or

27  potential appeal." Doc. No. 39-1 at 7.  Therefore, this factor favors approval.

28  / / /

1
2

     5.   <u>Whether the Class has been Fairly and Adequately Represented</u>
           <u>During Settlement Negotiations</u>

3
4
5
6
7

     "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528; *Adoma*, 913 F. Supp. 2d at 977.

8
9
10
11
12
13

     Class Counsel assert that they have extensive experience in class action litigation, having represented numerous class action lawsuits, and having been certified by numerous courts as adequate class counsel. Moreover, Class Counsel believe this matter "has settled on excellent terms," and the terms of the settlement are fair, reasonable and adequate to the Class Members. Doc. No. 39-1 at 9. Accordingly, this factor supports approval of the settlement.

14

     6.   <u>The Reaction of the Class to the Proposed Settlement</u>

15
16
17
18
19
20
21
22
23

     The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed no opposition).

24
25
26

     After receiving notice of the proposed settlement, none of the thirty-eight (38) Class Members have objected or requested an exclusion. Accordingly, this factor favors approval.

27

/ / /

28

/ / /

### C. Conclusion

Upon due consideration of the factors set forth above, the Court finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e), and therefore **GRANTS** Plaintiff's Motion for Final Approval of Class Action (Doc. No. 39).

### III.   Motion for Award of Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and costs in the aggregate amount of $32,500.  As set forth below, Plaintiff's request for attorneys' fees totals $31,580.76, and Plaintiff's request for litigation costs totals $919.24.

### A. Relevant Law

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  This action asserts California claims, and thus the Court applies California law to determine both the right to, and method for, calculating fees.  *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

"[F]ee shifting" refers to an award under which a party that did not prevail in the litigation is ordered to pay fees incurred by the prevailing party.  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000).  California Law permits fee shifting in favor of the prevailing party on certain statutory causes of action, and when a plaintiff has acted as a private attorney general by enforcing an important right affecting the public interest (for example, Cal. Civ. Proc. Code §1021.5).  *Laffitte v. Robert Half Intern. Inc.*, 376 P.3d 672, 676 (Cal. 2016).

In cases involving fee-shifting statutes, the primary method for establishing the reasonable attorney fees is the lodestar method.  *Staton*, 327 F.3d at 965.  The Supreme Court has affirmed the primacy of the lodestar method of computing fees in cases in which a fee-shifting statute applies.  *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) ("[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").  California courts routinely exercise their discretion to calculate

attorneys' fees by applying the lodestar method where, as here, the settlement does not use common-fund principles.  *See Lealao*, 82 Cal. App. 4th at 26 (where "the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method.").

The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate with the court increasing or decreasing that amount by applying a positive or negative multiplier based on, among other factors: (i) the quality of representation; (ii) the novelty and complexity of the issues; (iii) the results obtained; and (iv) the contingent risk presented.  *In re Consumer Privacy Cases*, 96 Cal. Rptr. 3d 127, 136 (Cal. Ct. App. 2009).  The ultimate inquiry is whether the end result is reasonable. *See Apple Computer, Inc. v. Superior Court*, 24 Cal. Rptr. 3d 818, 826 (Cal. Ct. App. 2005).

## B. The Requested Attorneys' Fees Are Reasonable

Class Counsel assert that they are entitled to attorneys' fees and costs pursuant to Cal. Civ. Code § 1780(d) (the CLRA) and Cal. Code Civ. Proc. § 1021.5, in the aggregate amount of $32,500.  *See* Doc. No. 37-1 at 11.

The lodestar method is appropriate in this case because Plaintiff alleges violations of the CLRA, which contains a mandatory fee-shifting provision requiring that attorneys' fees be awarded to a "prevailing plaintiff."  Cal. Civ. Code § 1780.  Additionally, Plaintiff seeks attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5. Where section 1021.5 provides the right to attorneys' fees, the lodestar method of calculation is preferred.  *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 321-22 (Cal. 1983).

Class Counsel's request for fees is reasonable, given that the requested fees are a negative multiplier of Class Counsel's lodestar to date.  Further, consideration of the relevant factors outlined above militates in favor of the reasonableness of the fees.

### 1. Lodestar Calculation

Class Counsel request a fee award of $31,850.76.  As the following table indicates,

Class Counsel expended 119.8 hours on this matter.  Counsel's hourly rates range from $300 per hour to $605 per hour, with an average hourly rate of $503.33.

| Name | Hours | Hourly Rate | Total |
|------|-------|-------------|-------|
| Abbas Kazerounian, Esq. | 25.7 | $605 | $15,548.50 |
| Mona Amini, Esq. | 68.7 | $300 | $20,610.00 |
| Joshua B. Swigart, Esq. | 25.4 | $605 | $15,367.00 |
| **Total** | **119.8** | **~$503.33** | **$51,525.50** |

The Court first considers whether Class Counsel's hourly rates are reasonable.  A reasonable hourly rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation."  *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986); *see also Davis v. City of S.F.*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).  Both Mr. Kazerounian and Mr. Swigart are partners at their respective firms, and have been previously approved for an hourly rate of $595.  Kazerounian Decl. ¶ 18; Swigart Decl. ¶ 17.  Both Mr. Kazerounian and Mr. Swigart have significant experience in litigating consumer class action cases.  According to the Court in *Shames v. Hertz Corp.*, "[t]he National Law Journal data reveals that rates at six national defense firms with San Diego offices averaged between $550 and $747 per hour for partners and $346 and $508 per hour for associates."  2012 U.S. Dist. LEXIS 158577, at *60 (S.D. Cal. Nov. 5, 2012).  Accordingly, the Court finds the hourly rates of

Mr. Kazerounian and Mr. Swigart are reasonable.

Additionally, the 2013 National Law Journal Billing Survey indicates the average hourly rate for an associate at a surveyed law firm in Costa Mesa, California, was $320, with a high of $500 and a low of $230.  Although Mona Amini does not attach a declaration, the Court finds the hourly rate of $305 is within the average rate for associates in Costa Mesa.

In sum, the requested fees in this case are less than Class Counsel's lodestar to date, and do not include compensation for any time spent after the filing of the instant motions.  Therefore, the Court finds Class Counsel's hourly rates are reasonable.

The Court next considers whether the firms' expenditure of 119.8 hours on this case is reasonable.  Although counsel did not provide the Court with detailed time sheets, such detailed time sheets are not necessary.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").  Class Counsel claim the attorneys "prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case."  Doc. No. 37-1 at 13.  In addition, Class Counsel's contemporaneous time records "were carefully reviewed."  *Id.*

Based on the foregoing, when multiplying the reasonable hourly rate by the number of hours, Plaintiff's calculation of a $51,525.50 lodestar amount is both appropriate and "presumptively reasonable."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

### 2. Reasonableness Factors

As noted above, the Court can consider, among other factors: (i) the quality of representation; (ii) the novelty and complexity of the issues; (iii) the results obtained; and (iv) the contingent risk presented, in determining the reasonableness of the requested attorneys' fees.  *In re Consumer Privacy Cases*, 96 Cal. Rptr. 3d at 136.

### i.    Quality of Representation

Litigating this case involved significant research and investigation by counsel, extensive motion practice, and negotiating the settlement over a period of months. Additionally, Class Counsel note that Plaintiff would have encountered "considerable difficulty" in finding representation because Class Members' damages would not have justified individual suits. Doc. No. 37-1 at 6. In light of the nature of this case, Class Counsel negotiated a settlement in which all Class Members receive a 100% refund of the purchase price, with ten (10) percent interest per year. Thus, this factor favors approval of the requested attorneys' fees award.

### ii.    Novelty and Complexity of the Issues

Class Counsel assert that consumer litigation inevitably involves large corporations, which have enormous resources. Doc. No. 37-1 at 7. These large companies "often vigorously resist" settling. *Id.* Additionally, counsel spent a combined total of 119.8 hours working on this matter, and reached a settlement which provides "exceptional relief." *Id.* at 1. As such, this factor favors approval.

### iii.    Results Obtained

The Class is receiving a highly favorable outcome because each Class Member is entitled to a full refund of the purchase price of the Lands' End product at issue, in addition to interest at the rate of ten (10) percent per annum from the date of purchase without the need to file a claim. Moreover, Class Counsel assert that the settlement has a "deterrent effect and sets a precedent for other businesses that misrepresent their products. . ." Doc. No. 37-1 at 5. Accordingly, this factor favors approval.

### iv.    Contingent Nature of the Case

Class Counsel bore the risk and cost of this litigation for more than two years on a contingency basis. Counsel advanced all costs and deferred all payment of fees in this case with no guarantee that any of these expenses would ever be recovered. Litigating this case also required counsel to forgo other fee-generating work. Accordingly, this factor favors approval of the requested attorneys' fees award.

3. <u>Conclusion</u>

The requested fee award in this case is $31,850.76. Despite the fact that Class Counsel could seek to obtain a modest multiplier of their lodestar calculation ($51,525.50), Class Counsel request to recover only a negative multiplier of their lodestar amount. Moreover, because the factors outlined above favor approval of the requested attorneys' fees award, the requested attorneys' fees are reasonable.

**C. Plaintiff's Costs are Reasonable**

Class Counsel seek reimbursement of their costs in the amount of $919.24. *See* Kazerounian Decl. ¶ 46; Swigart Decl. ¶ 31.

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Plaintiff asserts, "Lands' End agrees not to oppose Plaintiff's application for an award of reasonable attorneys' fees ***and litigation costs*** through the entry of the Final Order and Judgment, to Plaintiff's Counsel in an amount ***not to exceed $32,500 in fees and expenses***, subject to Court approval." Doc. No. 37-1 at 1 (emphasis added). Thus, the $32,500 fee award requested includes the litigation costs. Accordingly, the requested amount of $32,500 can be itemized as follows:

- Attorneys' Fees: $31,580.76
- Litigation Costs: $919.24

Class Counsel's expenses include filing fees, services costs, and mailing costs. *See* Kazerounian Decl. ¶ 45; Swigart Decl. ¶ 31. Accordingly, because Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, and were advanced by Class Counsel for the benefit of the Class, the Court

**APPROVES** reimbursement of litigation costs in the amount of $919.24.

<u>C</u>ONCLUSION

For the reasons set forth above, the Court finds that the proposed class action settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e), and therefore **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 39).  The Court further **GRANTS** Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 37) and **APPROVES** Plaintiff's requests as follows:

1.    Class Counsel shall receive an award for attorneys' fees in the amount of $31,580.76; and

2.    Class Counsel's litigation costs shall be reimbursed in the amount of $919.24.

<u>J</u>UDGMENT AND <u>O</u>RDER OF <u>D</u>ISMISSAL

The Court **APPROVES** the Settlement and **ORDERS** the parties to implement the Settlement Agreement according to its terms and any additional conditions set forth in this Order.

1.    The Settlement Class covered by this Order is defined as:

All Persons who, at any time from October 29, 2010 through October 29, 2014, purchased the "Kids To-Be-Tied Plaid Necktie" (SKU No. 3668260) in the State of California.

2.    The Court finds and determines that Plaintiff Elaine Oxina, is confirmed as the Class Representative, and Abbas Kazerounian of the Kazerouni Law Group, APC and Joshua B. Swigart of Hyde & Swigart, are confirmed as Class Counsel.

3.    Pursuant to this Court's April 6, 2016 Order Granting Motion for Preliminary Approval of Class Action Settlement (Doc. No. 36), the Class Notice, which was preliminarily approved by the Court, was disseminated to all thirty-eight (38) Class Members via U.S. Mail to the last known mailing address contained in Lands' End's records.  Lands' End also sent direct notice by e-mail to thirty-four (34) Class Members for whom Lands' End had e-mail addresses.  The Class Notice described the lawsuit,

disclosed the proposed awards to Class Members, and discussed in "great detail the consequences of remaining in the class vs. requesting exclusion and provided clear instructions on how to opt out, file objections or note comments on the Settlement."  Doc. No. 39-1 at 3.  No Class Members filed written objections to the Settlement or stated an intent to appear at the Final Approval Hearing.

4.     The Court finds and determines that the notice procedure afforded adequate protections to Class Members and provided the best notice practicable.  The notice satisfied the requirements of law and due process.

5.     The Court has determined that the proposed Settlement Class, as defined above, meets all of the legal requirements for class certification, and it is hereby **ORDERED** that the Settlement Class is finally approved and certified as a Class for Purposes of Settlement of this Action.

6.     The Court further finds and determines that the terms of the Settlement are fair, reasonable, and adequate as to each Class Member, that Class Members shall be bound by the Settlement, and **ORDERS** that the Settlement is finally approved, and that all terms and provisions of the Settlement shall be consummated.  The material terms of the Settlement Agreement include, but are not limited to, the following:

A.     Lands' End shall pay Class Members a refund of their full purchase price plus interest at the rate of ten (10) percent per annum from the date of purchase.

B.     Lands' End will administer payment to the Settlement Class through its customer service department, and all costs and expenses of class notice and administration of claims shall be paid and borne by Lands' End outside of the compensation being offered to Class Members.  Lands' End will send a Declaration to Class Counsel of the timing and results of the refund within ten (10) days of issuance.

7.     No exclusions were received from the Settlement Class.  The Class Members were given an opportunity to object to the Settlement.  No objections were filed

by Class Members.  Thus, this Order is binding on all Class Members.

8.     The Court **GRANTS** the application presented by Class Counsel for an award of attorneys' fees and reimbursement of litigation costs in the aggregate amount of $32,500, pursuant to paragraph 12(a) of the Settlement Agreement.  The Court **ORDERS** Lands' End to pay this amount to Class Counsel within fourteen (14) days of entry of this Order.

9.     The Class Representative, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually, or as a class, or in any other capacity, any of the Released Claims against any of the Released Persons, as set forth in the Agreement.  Pursuant to the Release contained in the Settlement Agreement, the Released Claims are compromised, discharged, and dismissed by virtue of these proceedings and this Order.

10.     The Court hereby **DISMISSES** this action, including the claims alleged in the SAC, **with prejudice**.

11.     Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Action and/or Settlement Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of this Order and the Settlement.


          **IT IS SO ORDERED.**


Dated:  December 2, 2016

                              _Michael M – Anello_
                              HON. MICHAEL M. ANELLO
                              United States District Judge